In the Matter of the Estate of EDWARD W. BROWNING, Deceased.

Surrogate's Court, New York County, November 22, 1934.

*Chadbourne, Stanchfield & Levy* and *Victor K. D. Ross* [*George W. Whiteside* of counsel], for the executors.

*Daniel F. Cohalan,* for Frances Heenan Browning.

*Daniel A. Shirk,* for Franklin S. Keller, as general guardian for Dorothy Browning Hood.

*Leslie J. Tompkins,* special guardian for Majorie Browning.

*N. Henry Josephs,* for Nellie Adele Lowen Browning.

Opinion on petition to strike out appearance of Frances Heenan Browning, November 22, 1934.

DELEHANTY, S. A daughter by adoption of deceased moves to strike out the appearances in this probate proceeding of persons known as Frances Heenan Browning, Nellie Adele Browning and Marjorie Browning.

In respect of the first named the moving papers show that between her and deceased there was entered in the Supreme Court of the State of New York 'a judgment in a matrimonial action which determined that deceased was entitled to a separation from Frances Heenan Browning on the ground of abandonment. That judgment further determined that Frances Heenan Browning, " having wilfully and intentionally abandoned " deceased, was thenceforth not entitled to any maintenance or support from him. That judgment concededly remained in effect until the death of deceased and was not altered in any wise by the court nor modified by any conduct of the parties.

Deceased died after August 31, 1934. Effective on September 1, 1934, section 87 of Decedent Estate Law had been amended so as to provide that no distributive share in intestacy of the estate of a decedent should be allowed to a wife who had abandoned her husband. The judgment of the Supreme Court determined the issue of abandonment adversely to the party whose appearance is the subject of the motion to strike out. She can have, therefore, no interest in the estate as a distributee in intestacy.

Section 18 of Decedent Estate Law has since and preceding September 1, 1934, provided that a wife who had abandoned her husband may not elect to take an intestate share as against his will.

The amendment to section 87 of Decedent Estate Law, effective September 1, 1934, was intended to make effective in intestacy the same principle which had been effective theretofore in cases of testacy. The judgment referred to bars any right of election against a will.

Counsel for this party seeks to maintain her right to continue in the probate proceeding by asserting the invalidity of certain devises and bequests in the will of deceased to benevolent, charitable and other like uses. No special status accrues in respect of property of a deceased held to be bequeathed or devised to charitable and like uses in excess of the statutory limit. Such property (unless otherwise disposed of by the testamentary instrument) becomes intestate property. One not entitled to share as a distributee of an intestate may not raise issues respecting intestate property resulting from an invalid gift.

Her counsel further seeks to establish a basis of participation in this proceeding by reason of the text of the paper propounded as the first codicil to the propounded will. Counsel quotes a phrase from that codicil which says " and because of her conduct as herein described toward me, I disinherit her from any of the benefits of my estate, except such interest as the law provides for her at the date of this Codicil." Counsel argues that since the law provided a one-third interest for the wife of a deceased who also left a child or children, the text just quoted must be interpreted to effectuate a gift of one-third of the deceased's estate. It will be noted that the clause refers to recitals earlier made in the instrument. Those recitals refer to the matrimonial difficulties between deceased and his wife and to what deceased describes as a vindication by a decision in his favor in such action. Following the recital of these controversies and immediately preceding the clause above quoted, the text of the codicil says, "it is now my wish that my said wife shall not share in any of my personalty or other estate."

The clause quoted by counsel and urged by him to constitute a gift of one-third of the estate cannot be held to effectuate a gift even if isolated from the preceding text. At the date of the codicil, August 26, 1930, there was in effect the judgment of April 15, 1927, between deceased and his wife whereby the latter had been adjudged guilty of abandoning deceased without justification. He was at that date entirely free to disinherit her and as of the date of the propounded codicil she had no right of election against his will.

It is not necessary to consider the problem in this aspect, however, because the standard rule of interpretation requires consideration of the entire text of the instrument in determining the meaning of any clause or phrase therein. The statement by deceased that he

did not wish his wife to share in any of his personalty or other estate makes plain that the clause or phrase quoted by her counsel can bear no interpretation such as she contends for. His meaning is unambiguous — no matter what lack of artistry there may be in the choice of his words. He said that he did not intend to give to his wife any property whatever unless the law — contrary to his declared wishes — forced her participation. His words are words of exclusion, not words of grant. She is not entitled to participate in this probate proceeding by reason of the tenor of the propounded codicil.

A final reason is urged why her appearance should not be stricken. Prior to the making of the motion now before the court the parties, including the widow of deceased, had through counsel stipulated for the time and manner of the examination of the subscribing witnesses to the propounded papers. The stipulation contains among other things the following: " Frances Heenan Browning may then and there examine the subscribing witnesses." Counsel who now makes the motion to strike out the appearances was one of the signers of the stipulation referred to and it is urged that he is disabled thereby from bringing on this motion. The point is not well taken. The court may at any time bar from intervention in its processes persons who are strangers to the issue. The stipulation signed by the moving party did not bar that party from calling to the attention of the court the lack of interest in this litigation of any record party therein. Such stipulation could not constrain the court.

Accordingly the motion to strike from the record the appearance of Frances Heenan Browning is granted and she is excluded from further participation in the probate proceedings.

Submit, on notice, an order reciting the papers relevant to the status of Frances Heenan Browning and directing the striking out of her appearance.

Further consideration will be given to the motions addressed to the appearances of Nellie Adele Browning and Marjorie Browning when the record in respect of them is complete.

Opinion on petition to strike out appearance of Marjorie Browning, December 6, 1934.

DELEHANTY, S. An appearance has been filed in this probate proceeding by a special guardian acting in behalf of Marjorie Browning, concededly the adopted daughter of Nellie Adele Browning, the first wife of deceased. The special guardian asserts that the status of his ward is that of adopted daughter of deceased and, hence, that she has a right to be heard in the probate proceeding now pending. A party in interest moves to strike out the appearance of Marjorie Browning.

With a commendable frankness which has been of real aid to the court the special guardian has discussed the authorities dealing with the status of his ward and has not sought to minimize the matters which may be urged against his position. His answer to the petition raises no real issue of fact and the question presented, therefore, is one of law.

The common law made no provision for adoption. The practice of adoption was recognized by certain of the continental nations but had no part in the law of England at the time this country attained independence. It has existed in the State of New York solely by reason of statutory authority. (*Matter of Thorne*, 155 N. Y. 140; *Carpenter* v. *Buffalo General Electric Co.*, 213 id. 101.) Beginning with the original statute of 1873* various acts regulating adoption have been passed. These with amendments were eventually embodied in the Domestic Relations Law.

On May 3, 1918, Nellie Adele Lowen Browning applied to this court for its order permitting the adoption by her of Josephine Herbst and authorizing the use of the name Marjorie Browning by the adopted child. The petition is a petition only by this first wife of deceased and the order made expressly authorizes the adoption of the child by the petitioner, and by her alone. Attached to the papers presented to this court upon which the order of adoption was made is a written consent of deceased. That consent is a consent to the prayer of the petition and hence to the adoption of the child by the wife of deceased. The consent goes no further.

At the time the order of adoption was made the Domestic Relations Law of this State permitted one spouse separately to adopt a child (§ 110); and required that consent to the adoption be given by the husband or wife of the proposed foster parent " unless lawfully separated, or unless they jointly adopt such minor " (§ 111). By its terms the statute contemplated and regulated an adoption by one only of a married couple. It regulated the process by requiring as a preliminary the consent of the other spouse to such adoption. It differentiated " consent " to adoption from " petition " to adopt. It is asserted by the special guardian (and all other parties agree) that deceased and his first wife were living together and maintaining a common household at the time of the adoption by the latter of the ward of the special guardian. In such circumstances — the spouses not being " lawfully separated "— the law required either a joint adoption by both spouses or the consent of the non-adopting spouse. As stated, the consent was given by deceased. The requirements of the statute were strictly observed.

* Laws of 1873, chap. 830.— [Rep.

The adoption was effective as an adoption by the first wife of deceased. The order went no further than that.

The special guardian urges that in the proceeding which resulted in the order of adoption deceased was a principal and that his first wife was only the agent; and so, he argues, the adoption by the first wife of the child now seeking participation in this probate proceeding was in truth an adoption by deceased. The argument may be characterized perhaps as ingenious. Two refutations of it are readily at hand. The first and conclusive answer is that the statute expressly forbade the very thing for which the special guardian argues. By its terms the statute regulated the whole subject of adoption. It expressly forbade adoptions in any form other than those therein prescribed. Equally pertinent is the counter that the declared objective in the proceeding was the adoption of the child by the wife. Whether deceased was principal in that objective or merely an assenting party thereto it still remains the case that the declared objective was attained by the entry of the order effecting adoption by the wife of deceased and by her alone.

It follows that Marjorie Browning is not the adopted child of deceased.

The Surrogate's Court Act, section 314, subdivision 10, defines persons interested in an estate as those entitled absolutely or contingently to share in the estate in any capacity other than that of creditor. The interest which entitles one to participate in a probate proceeding must be a pecuniary interest, therefore. (*Matter of Cook*, 244 N. Y. 63.)

Marjorie Browning is not a person entitled to share in the estate of deceased. She is not entitled to appear in this pending probate proceeding and accordingly her appearance will be stricken from the record.

Submit, on notice, order reciting the papers pertaining to the status of Marjorie Browning (inclusive of the file of original papers in the adoption proceeding) and directing the striking out of her appearance.

Opinion on petition to strike out appearance of Nellie Adele Lowen Browning, December 8, 1934.

DELEHANTY, S. By order to show cause a party in interest in the pending probate proceeding in the above-entitled estate moved to strike out the appearances in the proceeding of three named persons. In respect of two of them the application has already been granted. There remains for disposition the application to strike out the appearance of the first wife of deceased.

The petition upon which the order to show cause was granted asserted dissolution of the marriage between deceased and his first wife by a decree of a court of competent jurisdiction. To that

petition she interposed an answer setting up facts which if true would require examination into the purported decree and the circumstances attending its procurement. On the return day of the order to show cause petitioner obtained leave to file and did file an amended petition. Added allegations asserted that prior to marriage between deceased and his first wife they entered into an agreement of marriage settlement of which a copy is attached to the amended petition; that thereafter while living separate and apart they entered into a separation agreement of which a copy is attached to the amended petition; that deceased established a residence in the city of Paris, Republic of France, and thereafter commenced an action for divorce against her in which action she appeared and in which action he procured a divorce from her on the ground of abandonment; that thereafter deceased married in the State of New York another person with whom he lived for a time and from whom he procured in the Supreme Court of the State of New York a judgment of separation on the ground of abandonment; and that deceased performed on his part all the terms and conditions of the marriage settlement agreement and of the agreement of separation made by him with his first wife.

The court granted an application of the first wife for further time to consider and determine her course of action in respect of the amendments to the petition. The original answer filed by her was addressed solely to the allegations in the original petition. With this was submitted an affidavit of counsel reciting various facts in relation to the legal proceedings between deceased and his first wife. The court directed counsel to submit a further answer to the petition as amended and fixed December 6, 1934, as the date for filing such further answer. On that date a further answer was filed by the first wife of deceased which put in issue once more the validity of the divorce decree alleged in the original petition and in the amended petition to have been entered into between her and deceased. In her further answer she also denied the allegation in the amended petition that deceased after the date of such decree intermarried with another person in the State of New York. This latter denial is predicated, no doubt, of the same assertion of invalidity in the Paris decree of divorce. No other issue was raised by her.

The answer interposed would require trial of the fact issues arising under the allegations respecting the Paris decree of divorce if determination of its validity were required. If such allegations were established the Paris decree might be held invalid though it might likewise develop that the first wife of deceased had estopped herself from questioning its validity. It is not necessary to consider the

question at all if for other reasons the prayer of the petition should be granted.

Counsel for deceased's first wife has asked that this court relinquish jurisdiction and permit the determination in the Supreme Court of the matrimonial status of his client in an action which he asserts he desires to bring there for a declaratory judgment. This court has undoubted power to determine preliminarily the status of persons claiming the right to participate in proceedings here pending. Proponent and the persons interested in deceased's will have the right to be heard here and to have a prompt determination of any issues raised by proper parties respecting the will of deceased. It would be inappropriate that out of deference to the Supreme Court the proceedings on this probate should be suspended for an indefinite period while counsel sought in that court the relief outlined. Accordingly this court will determine whether on the issues arising upon this petition and the answer thereto this application to strike out the appearance should be granted. (*Matter of Cook*, 244 N. Y. 63, at p. 72.)

The state of the record is that the making of the marriage settlement agreement and of the separation agreement between deceased and his first wife and the performance by deceased of all the terms and conditions thereof stand admitted.

By the marriage settlement agreement the first wife of deceased specifically limited her claims against deceased and against his estate. By the terms of the separation agreement deceased created a trust fund with a named trustee for the purpose of securing the payment to her of $6,000 per year so long as she should live. She in turn agreed that in consideration of this act of deceased she accepted the provisions of the separation agreement in lieu of dower, in lieu of all claims against deceased's estate, in lieu of all claims under the marriage settlement agreement, in lieu of any claim for maintenance or support and in lieu of all other claims and demands of every kind.

It stands conceded that since the date of the separation agreement in 1923 the first wife of deceased has been in receipt of $6,000 per year and still possesses the right to receive from the trust fund in question the same sum per annum so long as she shall live.

Agreements of the sort made part of the amended petition and admitted by failure to deny them have often been before the courts of this State. Their legal effect has been considered by our highest court and they have been held to bar the recipient of benefits under them from participation in the estate of a deceased party thereto if by the terms of the agreement such participation has been released or waived. The courts have held that there is nothing

against public policy in the making of such agreements. (*Matter of Cook, supra.*)

Accordingly it is held that by the terms of the agreements made with deceased by his first wife she is barred from any participation in his estate. She is not a person " interested " within the meaning of the statute (Surr. Ct. Act, § 314, subd. 10) defining persons entitled to appear in such proceedings as this. Accordingly her notice of appearance will be stricken out. It is unnecessary to consider or pass upon the issues raised in respect of the Paris decree of divorce.

Submit, on notice, order reciting the papers pertaining to the application to strike from the record the appearance of Nellie Adele Lowen Browning and directing that her appearance be stricken from the record.